This decision was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Please also note that this electronic decision may contain computer-generated errors or other deviations from the official paper version filed by the Supreme Court and does not include the filing date.

## IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO**,

Plaintiff-Respondent,

**v.**                                                     NO. 32,444

**OLIVER STANLEY**,

Defendant-Petitioner.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Ross C. Sanchez, District Judge**

William A. O'Connell, Assistant Appellate Defender
Santa Fe, NM

for Petitioner

Gary K. King, Attorney General
Anita Carlson, Assistant Attorney General
Margaret E. McLean, Assistant Attorney General
Santa Fe, NM

for Respondent

### DECISION

**Daniels, Chief Justice.**

This Court granted certiorari to review one of the issues addressed in the

Court of Appeals memorandum opinion, affirming the district court's refusal to give a lesser included offense instruction on statutory rape in a case in which Defendant had been charged with the greater offense of coercive rape of a minor by a person in a position of authority. The State has subsequently acknowledged error on that issue, conceding that the district court committed reversible error in refusing the requested instruction. We agree that the State's concession was correct. We therefore reverse the Court of Appeals, on the lesser included offense instruction issue alone, and remand to the district court for a new trial.

Having considered the record, briefing, and applicable law in this case, we conclude that there is no reasonable likelihood that a formal opinion would advance New Mexico law. Acting within this Court's discretion under Rule 12-405(B)(1) NMRA to dispose of a case by decision rather than formal opinion where the "issues presented have been previously decided," we enter this Decision.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

Defendant Oliver Stanley was indicted for, among other offenses, second-degree criminal sexual penetration (CSP II), as then defined in NMSA 1978, Section 30-9-11(D) (2003):

> D.  Criminal sexual penetration in the second degree consists of all
> criminal sexual penetration perpetrated:
>         (1) on a child thirteen to eighteen years of age when the

2

perpetrator is in a position of authority over the child and uses this authority to coerce the child to submit.[1]

At the time of the offense, the statutory element "position of authority" was defined as "that position occupied by a parent, relative, household member, teacher, employer or other person who, by reason of that position, is able to exercise undue influence over a child." NMSA 1978, § 30-9-10(E) (2005). The State's evidence at trial for "position of authority" and "uses this authority to coerce the child to submit"—both essential elements of CSP II theory—was that, although Defendant was unrelated to thirteen-year old Victim, he acted as head of the household. Victim lived with Defendant, who was in his forties, and Victim's older sister Esther, who was Victim's legal guardian and Defendant's fiancée. The State had removed Victim from her parents' home, and Esther had received guardianship over her as a result.

The State introduced evidence that Defendant set house rules and controlled household finances. He gave Victim an allowance and assigned her house-cleaning

---

[1]The 2007 amendment removed the "position of authority" element and reworded Subsection D(1) to provide in its entirety: "by the use of force or coercion on a child thirteen to eighteen years of age." *See* NMSA 1978, § 30-9-11(E)(1) (2007). Because Defendant was indicted for acts that occurred in 2003, this Decision references the applicable 2003 provisions of the CSP statute, Section 30-9-11.

duties, which he supervised. Victim testified that she felt Defendant was in charge of the household, saying "what he said goes." Victim's testimony about her relationship with Defendant was somewhat negative. She testified that she began to lose respect for Defendant because of his behavior towards her sister. She felt her sister was "pathetic" for continuing to have a relationship with Defendant. She said that over time she became "withdrawn . . . not open to [Defendant] anymore."

In June, 2003, Victim's relationship with Defendant began to change, becoming "very confusing and awkward." Victim chronicled the changes in her journal, writing "it seems like [Defendant] is hitting on me. I guess it is just nothing. I like him as a father but not the other way." Defendant began complimenting Victim on her looks and at times touched her breasts. Defendant and Victim first had sex on June 7, 2003. Victim was somewhat ambiguous about the reasons for her participation. When asked at trial why she submitted to Defendant's advances, Victim testified that she did not know. She also testified that Defendant told Victim after they had sex that if she told anyone, "he was going to hurt [her] and [her] family." She said the reason she did not tell her parents what had happened was because she was scared. Defendant and Victim then had further sexual contact over the next several days.

On June 12, 2003, Defendant, Victim, and Esther all watched TV together.

4

After Esther went to bed, Defendant kissed Victim's breasts, put his finger in her vagina, and started to put his penis in her vagina. Esther returned because she was suspicious of Defendant's and Victim's interactions. When she returned, Esther saw Victim and Defendant together and confronted Defendant. While Victim testified at trial that she had not wanted "to engage in th[o]se sexual activities with [Defendant]," the jury also learned she had recounted the event in her journal, writing "my sister caught *us*" rather than "my sister caught *him*." Esther reported Defendant to the police on June 13, 2003, and this prosecution ensued.

After the close of evidence at trial, Defendant requested a lesser included offense instruction for non-coercive statutory rape (CSP IV), as defined in NMSA 1978, Section 30-9-11(F)(1):

> F.  Criminal sexual penetration in the fourth degree consists of all criminal sexual penetration:
>     (1) not defined in Subsections C through E of this section perpetrated on a child thirteen to sixteen years of age when the perpetrator is at least eighteen years of age and is at least four years older than the child and not the spouse of that child.

The State objected, and the district court refused to give the jury the option of considering the lesser included offense of CSP IV. The jury convicted Defendant of four counts of CSP II, among other offenses.

The Court of Appeals affirmed Defendant's convictions in a memorandum

opinion, *State v. Stanley*, No. 28,288 (N.M. Ct. App. May 12, 2010), and this Court granted certiorari to review the lesser included offense instruction issue. Prior to the scheduled oral argument, the State filed a written concession that the refusal of the instruction had been reversible error. Although we were not bound by the State's concession, see *State v. Foster*, 1999-NMSC-007, ¶ 25, 126 N.M. 646, 974 P.2d 140, we agreed with it and vacated the oral argument. In this Decision, we set out briefly the reasons Defendant's CSP II convictions must be reversed and the case remanded for a new trial on those counts of the indictment.

## II.     DISCUSSION

## A.     Standard of Review

"The propriety of jury instructions given or denied is a mixed question of law and fact. Mixed questions of law and fact are reviewed de novo." *State v. Salazar*, 1997-NMSC-044, ¶ 49, 123 N.M. 778, 945 P.2d 996. "When considering a defendant's requested instructions, we view the evidence in the light most favorable to the giving of the requested instruction[s]." *State v. Boyett*, 2008-NMSC-030, ¶ 12, 144 N.M. 184, 185 P.3d 355 (alteration in original) (internal quotation marks and citation omitted).

**B.		The *Meadors* Cognate Approach**

In *State v. Meadors*, 121 N.M. 38, 44, 908 P.2d 731, 737 (1995), this Court articulated the "cognate approach" a trial court should apply in considering a request for a lesser included offense instruction. The court should first apply a definitional elements test and give the instruction "when the statutory elements of the lesser crime are a subset of the statutory elements of the charged crime." *Id.* Prior to *Meadors*, when a defendant requested an instruction, we applied only this strict elements approach, in which the lesser offense cannot have any essential element that is not included in the definition of the greater offense. *See State v. Henderson*, 116 N.M. 537, 541, 865 P.2d 1181, 1185 (1993), *overruled by Meadors*, 121 N.M. at 46-47, 908 P.2d at 739-40. *Meadors* recognized that we should go beyond theoretical possibilities to consider case realities in determining when a jury should be given the option of acquitting on a greater offense and convicting on a lesser. Under the *Meadors* cognate approach, even if the traditional strict elements test has not been satisfied, the lesser offense instruction should also be granted if:

> (1) the defendant could not have committed the greater offense in the manner described in the charging document without also committing the lesser offense, and therefore notice of the greater offense necessarily incorporates notice of the lesser offense; (2) the evidence adduced at trial is sufficient to sustain a conviction on the lesser offense; and (3) the elements that distinguish the lesser and greater offenses are sufficiently in dispute such that a jury rationally could

acquit on the greater offense and convict on the lesser.

121 N.M. at 44, 908 P.2d at 737.

Although the holding in *Meadors* addressed a request for a lesser included offense instruction by the State and not by the defendant, this Court also reasoned that "the defendant's right to such an instruction is at least as great as the State's right, and that the defendant is entitled to such an instruction if, under the facts of a given case, the State would be so entitled." *Id.* at 47, 908 P.2d at 740; *see also State v. Campos*, 1996-NMSC-043, ¶ 21 n.2, 122 N.M. 148, 921 P.2d 1266 (citing *Meadors* for the proposition that the cognate approach is also applicable when the defendant requests a lesser included offense instruction).

The application of the cognate approach in *Meadors* itself is instructive. The grand jury in *Meadors* returned a three-count indictment charging the defendant with attempted first-degree murder, aggravated arson, and negligent use of an explosive. *See Meadors*, 121 N.M. at 41, 908 P.2d at 734. Evidence at trial indicated the defendant carried a cup of gasoline into the house of his victim, threw the gasoline on the victim, struck a match, and set the victim on fire. *Id.* at 40-41, 908 P.2d at 733-34. The defendant claimed that he had spilled the gasoline on the victim by accident and then lit the match in self defense. *Id.* At the close of the evidence, the State requested and received over the defendant's objection a jury instruction on

8

aggravated battery as a lesser included offense of attempted first-degree murder. *Id.* at 41, 908 P.2d at 734. *Meadors* first analyzed the statutory elements of aggravated battery: "an unlawful touching and either the use of a deadly weapon, great bodily harm, or the likelihood of great bodily harm." *Id.* We acknowledged that none of those elements are statutory essential elements of attempted murder. *Id.*

Applying the cognate approach, however, we confirmed that a court should "determine the need for lesser-included offense instructions by examining not only the offense alleged in the charging instrument but also the evidence adduced at trial, for it is that evidence which will ultimately confirm or invalidate the accuracy of the accusatory pleading." *Id.* at 44, 908 P.2d at 737. Even though the defendant was charged with attempted murder and arson, in light of the combination of the facts alleged in the charging document and the evidence introduced at trial, a jury could have concluded that the defendant could have committed aggravated battery instead of murder. *See id.* The charges in the indictment all related to the same conduct, and while no single charge contained all of the necessary elements for aggravated battery, the combined charges did. *Id.* at 46, 908 P.2d at 739. The "substantial part of First Degree Murder" alleged in the attempted murder count was the defendant's throwing gasoline on the victim and lighting the match. *Id.* at 45, 908 P.2d at 738. The arson charge, which alleged the "defendant . . . did . . . start a fire . . . which

9

caused great bodily harm to [the victim]," fulfilled the "great bodily harm" element of aggravated battery. *Id.* at 46, 908 P.2d at 739. Viewed as a whole, the indictment would have put the defendant on notice that the State would allege at trial that he unlawfully touched the victim and that the unlawful touching resulted in great bodily harm. *Id.*

*Meadors* also noted that it was reasonably possible that the lesser charge could have been the greatest charge the jury might unanimously have found established beyond a reasonable doubt. *Id.* at 46-47, 908 P.2d at 739-40. "[B]ased upon the allegations in the indictment and the evidence adduced at trial, a jury could reasonably conclude that [the defendant] had intended to throw gasoline on [the victim] and ignite him, but that he lacked the intent to take [the victim]'s life." *Id.* at 44, 908 P.2d at 737. Viewed in this way by a jury, the evidence would have supported a conviction of aggravated battery but not of attempted murder. *Id.* This Court accordingly upheld the district court's decision to instruct the jury on the uncharged lesser included offense of aggravated battery. *Id.*

Similar applications of the cognate approach have been employed in subsequent cases. *See State v. Neatherlin*, 2007-NMCA-035, ¶ 1, 141 N.M. 328, 154 P.3d 703 (reversing for failure to instruct on the lesser misdemeanor offense of aggravated battery in a case charging felony aggravated battery with a deadly

weapon); *State v. Muñoz*, 2004-NMCA-103, ¶ 1, 136 N.M. 235, 96 P.3d 796 (reversing for failure to instruct on the lesser offense of DWI in a case charging reckless driving resulting in great bodily harm); *State v. Romero*, 1998-NMCA-057, ¶ 2, 125 N.M. 161, 958 P.2d 119 (reversing for failure to instruct on the lesser misdemeanor offense of criminal trespass where defendant was charged with felony aggravated burglary).

The cognate approach's emphasis on case realities instead of hypothetical theories alone means that a lesser offense instruction is not justified where the evidence is so overwhelming that no rational juror could view the evidence in such a way as to acquit on the greater charge and convict on the lesser charge. The defendant in *State v. Lente*, 2005-NMCA-111, 138 N.M. 312, 119 P.3d 737, was convicted of four counts of criminal sexual penetration of a minor, among other crimes, based on the victim's testimony that the defendant had inserted his finger all the way inside her vagina more than fifty times. *Id.* ¶¶ 15-16. The defendant requested, but was denied, lesser included offense instructions for criminal sexual contact of a minor. *Id.* ¶¶ 14-16. Applying the third prong of the *Meadors* test, the Court of Appeals held that, because there was no ambiguity in the evidence that could lead any rational juror to acquit on penetration yet convict on contact alone, denial of the defendant's requested instruction was proper. *Id.* ¶¶ 16, 19; *see also*

*State v. Juan*, 2010-NMSC-041, ¶ 1, 148 N.M. 747, 242 P.3d 314 (upholding the denial of a lesser instruction where the conduct underlying the greater charge and the conduct that would have supported the lesser included offense instruction were not the same).

With those principles in mind, we now apply the analysis required by the cognate approach to the record in this case.

**C.      Application of the Cognate Approach**

In this case, the district court began its analysis by applying the pre-*Meadors* strict elements test, reasoning that the lesser offense of statutory rape "is not necessarily included in the greater" because "the second degree offense can be committed without also committing the . . . fourth degree offense." "In the lesser offense, the victim must be at least 13 but less than 16 years old. Thus, hypothetically, if the victim is over 16 years of age, 17 years old and up to 18 years of age, the greater offense could be committed without also committing the lesser offense." This kind of theoretical analysis that ignores the realities of a particular case was exactly what led this Court to reject the "overly technical inflexibility of the strict elements approach" and adopt the more realistic cognate approach in *Meadors*, 121 N.M. at 44, 908 P.2d at 737. It is theoretically possible that Victim could have been seventeen years old instead of thirteen, but the jury knew she was

not.

New Mexico precedent recognizes the nontechnical approach required by *Meadors* in analyzing the allegations of the charging document. As the Court of Appeals has specifically recognized, "the charging document does not take on some talismanic quality under *Meadors*, but merely serves as a reliable indicator of the State's theory for purposes of determining whether Defendant was afforded proper notice of the charges against him." *State v. Darkis*, 2000-NMCA-085, ¶ 17, 129 N.M. 547, 10 P.3d 871. Because the fair notice function of a charging document is less important in evaluating a defendant's request for a lesser included offense instruction, "a defendant's right to a lesser-included offense instruction [under *Meadors*] is effectively greater than the State's." *Id.* ¶¶ 1, 16 (reversing conviction for failure to instruct on misdemeanor possession of drug paraphernalia in a case where the defendant was charged with felony possession of cocaine, although the indictment said nothing about the cocaine being found inside an item of paraphernalia). In this case, there could have been no doubt that the State was relying from the beginning on its theory that Defendant used his position as an adult authority figure, who in fact was at least four years older than thirteen-year-old Victim, to coerce her into sexual intercourse. The notice concerns in the first *Meadors* factor were at least as clearly satisfied here as they were in *Darkis*.

The district court was legally correct in its acknowledgment of the second *Meadors* factor, the sufficiency of the evidence to sustain a conviction on the lesser offense, but was simply mistaken about the evidence in the record in finding that "the evidence adduced at trial is not sufficient to sustain a conviction on the lesser offense. The defendant's age was not adduced at trial. The age difference required by the lesser offense has not been accomplished in evidence." The trial transcript demonstrates that evidence had been introduced showing Victim's age as thirteen and Defendant's age as over forty. The evidence clearly was sufficient to sustain a conviction of statutory rape in that it overwhelmingly would have supported findings that Defendant perpetrated sexual penetration on "[1] a child thirteen to sixteen years of age [2] when the perpetrator is at least eighteen years of age [3] and is at least four years older than the child [4] and not the spouse of that child." Section 30-9-11(F)(1).

The district court briefly mentioned the third *Meadors* factor, that "the elements that distinguish the lesser and greater offenses are sufficiently in dispute such that a jury rationally could acquit on the greater offense and convict on the lesser," but dismissed the factor with a brief conclusory statement that it had not been met in this case. *Meadors*, 121 N.M. at 44, 908 P.2d at 737. The application of this factor does not depend on the relative weight of evidence supporting the

greater and lesser offenses. The result in *Meadors* itself might well have been different if this Court had weighed the relative plausibility of the State's primary theory, that the defendant had intentionally thrown gasoline and a lighted match on the victim with an intent to kill or do great bodily harm, against the defendant's theory on which the State requested a lesser offense instruction, that he had accidentally poured the gasoline on the victim and only threw the match on him in self defense. Instead, we held that the State had a right to give the jury the option of convicting of a lesser offense in the event the State's theory failed to persuade all twelve jurors beyond a reasonable doubt. The accused has at least as much right as the State to have a jury exercise its constitutional role of deciding these issues of guilt and innocence. *See Darkis*, 2000-NMCA-085, ¶ 20 (holding that it is the right of a Defendant "to allow the jury the ability to make a choice, that is, as between a lesser and a greater charge").

The evidence in this case would have supported a conviction for either CSP II or CSP IV. The only question remaining is whether a jury rationally could have harbored reasonable doubt about either of the two elements distinguishing Defendant's culpability under the CSP II statute: his position of authority and his use of coercion. While the evidence was certainly sufficient to support findings on those two elements beyond a reasonable doubt, it is also possible that the jury might

not have been persuaded that Victim was coerced into having sex, given her testimony that she did not know why she consented to sex with Defendant, her testimony about her confusion, her keeping the activity secret, and her diary entry that her sister "caught us." Even viewing Defendant as de facto head of the household, it is within the realm of reasonable possibilities that the jury could have had a doubt as to whether the proof established that the sexual acts occurred as a result of coercion by Defendant as an authority figure and would not have occurred if Defendant had been merely a neighbor or visitor or other adult whom Victim knew. We must take into account that the State had the burden of proof on both those elements and that the jury was required by law to resolve all reasonable doubts in favor of Defendant. UJI 14-5060 NMRA ("Presumption of innocence; reasonable doubt; burden of proof"). Under either view of the evidence, Defendant's conduct was reprehensible and felonious, but one reason a Defendant may want a lesser included offense instruction is because of a concern that a jury might otherwise be inclined to resolve doubts in favor of guilt on the greater offense if the only alternative for the jury is to acquit a culpable defendant completely. As this Court recognized in *State v. Reynolds*,

> [t]o argue that a finding by the jury that the defendant [was guilty of the greater offense] precludes any possibility that they [would have convicted of the lesser] begs the question. The jury was simply not

16

given the choice. We do not consider this to be harmless and non-prejudicial where the evidence would support such a choice by the jury.

98 N.M. 527, 528-29, 650 P.2d 811, 812-13 (1982) (reversing a first-degree murder conviction for failure to give a lesser included instruction on voluntary manslaughter).

## III. CONCLUSION

The district court erred when it refused to instruct the jury on CSP IV. Accordingly, we reverse Defendant's convictions of CSP II and remand this matter to the district court for appropriate action. The State may retry Defendant on the CSP II counts, for which there is substantial evidence. In all other respects, the memorandum opinion of the Court of Appeals shall constitute the law of the case.

**IT IS SO ORDERED.**

_____
**CHARLES W. DANIELS, Chief Justice**

**WE CONCUR:**

_____
**PATRICIO M. SERNA, Justice**

_____
**PETRA JIMENEZ MAES, Justice**

_____
**RICHARD C. BOSSON, Justice**

_____
**EDWARD L. CHÁVEZ, Justice**

18