This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                            NO. 33,423

**JESSE RIVERA,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LEA COUNTY**
**Mark T. Sanchez, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Steven H. Johnston, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Nina Lalevic, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**VANZI, Judge.**

{1}     A jury believed that Defendant Jesse Rivera forced open the door of Kimberly Mendoza's apartment intending to commit a robbery. As a result, Defendant was convicted of various offenses, including breaking and entering, contrary to NMSA 1978, Section 30-14-8 (1981), and residential burglary, contrary to NMSA 1978, Section 30-16-3 (1971). He now argues that the district court improperly limited his defense by excluding one witness and limiting the cross-examination of another. He also contends that his convictions violate the right to be free from double jeopardy.

{2}     We affirm in the first respect, but we conclude that the jury was improperly instructed on the elements of breaking and entering, which, although not argued, is reversible in its own right. That erroneous instruction also resulted in a double jeopardy violation. Because this is a memorandum opinion and because the parties are familiar with the case, we reserve discussion of the facts for our analysis of the issues on appeal.

**DISCUSSION**

**Exclusion of Alexander Rivera**

{3}     Defendant hoped to secure the testimony of Alexander Rivera, his brother and alleged co-conspirator, who was tried separately. In violation of Rule 5-502(A)(3) NMRA, Defendant did not file his witness disclosure until 4:57 p.m. on the Friday before a Monday trial. Like most government offices, the Lea County District Court

2

clerk's office is open until 5:00 p.m., and closed on weekends, *see* Fifth Judicial District Court, http://fifthdistrictcourt.nmcourts.gov (last visited Sept. 2, 2016), which means that Defendant waited until virtually the last possible minute to disclose his witness. He also failed to disclose Alexander to the jury during voir dire. The record contains no explanation for any of this.

{4}     These are not technicalities. The late disclosure gave the State no reasonable opportunity to conduct a pretrial interview over the weekend, obtain transcripts (for impeachment) from Alexander's own trial, search its records for Alexander's prior convictions (if any), prepare to oppose any application for use immunity (if warranted), or generally prepare for cross-examination. The failure to discuss Alexander with the jury during voir dire also raised the possibility that Alexander had friends, associates, enemies, or others on the jury who would not be impartial to his testimony.

{5}     In his brief, Defendant vaguely asserts his fundamental right to put on his own defense, but "the mere invocation of that right cannot automatically and invariably outweigh countervailing public interests." *McCarty v. State*, 1988-NMSC-079, ¶ 7, 107 N.M. 651, 763 P.2d 360 (internal quotation marks and citation omitted). Before excluding evidence for a defendant's violation of a discovery rule, a court should weigh the extent of prosecutorial surprise or prejudice against the importance of the

3

evidence to the defense. *See State v. Guerra*, 2012-NMSC-014, ¶ 33, 278 P.3d 1031; *McCarty*, 1988-NMSC-079, ¶ 10. We review a district court's decision to exclude a witness for an abuse of discretion. *Guerra*, 2012-NMSC-014, ¶ 23. "An abuse of discretion occurs when the ruling is clearly against the logic and effects of the facts and circumstances of the case, is clearly untenable, or is not justified by reason." *State v. Balderama*, 2004-NMSC-008, ¶ 22, 135 N.M. 329, 88 P.3d 845.

{6}     We will assume that Alexander would have corroborated Defendant's version of events, though Defendant made no offer of proof below. *See State v. Campbell*, 2007-NMCA-051, ¶ 14, 141 N.M. 543, 157 P.3d 722 ("[N]o more prejudice need be shown than that the [district] court's order may have made a potential avenue of defense unavailable to the defendant." (internal quotation marks and citation omitted)). The record is inadequate to determine the importance of this corroboration, but we note that Defendant never treated Alexander as an important witness. He never applied for immunity to secure Alexander's testimony. *See State v. Belanger*, 2009-NMSC-025, ¶ 38, 146 N.M. 357, 210 P.3d 783. He never issued a subpoena to ensure Alexander's attendance at trial, and he apparently forgot about Alexander during voir dire.

{7}     On the other side of the equation, allowing the testimony despite the late notice to the State would have limited the State's ability to effectively cross-examine the

4

witness. Options for curing any prejudice would have raised new problems. Continuances after the jury is empaneled are not favored, *see State v. Branch*, No. 33,064, 2016 WL 3014609, 2016-NMCA-___, ¶ 56, ___ P.3d ___ (May 23, 2016), *cert. granted*, 2016-NMCERT-007, ___ P.3d ___ (No. 35,951, July 28, 2016), and a mid-trial re-voir dire of the jury could have resulted in a mistrial if it turned out that any juror knew Alexander.

{8} Furthermore, Defendant has not given any explanation for the rule violations, and we cannot dismiss the real possibility of sandbagging and gamesmanship. *McCarty*, 1988-NMSC-079, ¶ 16 ("The trial judge should consider whether the noncompliance was a willful attempt to prevent the [s]tate from investigating facts necessary for the preparation of its case."). Defendant must have known that his brother and alleged co-conspirator had potentially relevant testimony from the very beginning of the case. Despite having nearly a year to apply for immunity and provide notice to the State, he waited until the last minute before trial—when the court was about to close for the weekend and the transcripts from Alexander's own trial were likely out of reach. While Defendant's right to present a defense cannot be minimized, "the integrity of the adversary process, which depends both on the presentation of reliable evidence and the rejection of unreliable evidence; the interest in the fair and efficient administration of justice; and the potential prejudice to the

5

truth-determining function of the trial process must also weigh in the balance." *Id.* ¶ 10 (alteration, internal quotation marks, and citation omitted).

{9}     Defendant argues that Alexander may have been excluded for the wrong reason (the failure to issue a subpoena). But that is not our standard; we will affirm the district court if it is right for any reason. *State v. Ybarra*, 1990-NMSC-109, ¶ 8, 111 N.M. 234, 804 P.2d 1053. Regardless, the record does not support Defendant's contention. The court excluded the witness without explanation, as Defendant recognizes in his brief. "Abuse of discretion cannot be presumed but must be affirmatively established." *State v. Serrano*, 1966-NMSC-166, ¶ 13, 76 N.M. 655, 417 P.2d 795. "It follows that if the record is silent as to the reasons for a ruling, regularity and correctness are presumed." *Id.*; *see State v. Rojo*, 1999-NMSC-001, ¶ 53, 126 N.M. 438, 971 P.2d 829 ("Where there is a doubtful or deficient record, every presumption must be indulged by the reviewing court in favor of the correctness and regularity of the [district] court's judgment." (internal quotation marks and citation omitted)). On this record, we conclude that the district court did not abuse its discretion when it prevented Alexander from testifying.

**Cross-Examination of Detective Miranda**

{10}     As part of his investigation, Detective David Miranda interviewed Mendoza and two individuals, her husband and brother, that were with her when the home

6

invasion occurred. He believed their statements were consistent, and he testified accordingly. Defendant sought to impeach that testimony by highlighting various differences in the three statements. The district court permitted the line of questioning but told defense counsel to "zero in on the inconsistencies" because the court was concerned that the details seemed inconsequential and would waste the jury's time. Apparently attempting to speed things along, the court provided the form the questions should take: "In your report, you asserted that X was true. In fact, Y is true. Correct?"

{11} Upon cross-examination of Detective Miranda, defense counsel deviated from the district court's suggested format, and the State objected, and the objection was sustained. Cross-examination continued until it was eventually revealed that the statements were, in fact, not entirely consistent in at least one important respect. That is, while Mendoza and her husband stated that the door was broken open, her brother stated that Mendoza partially opened the door herself before it was pushed open.

{12} It is this seemingly innocuous bit of uncertainty that will ultimately lead to our reversal of the breaking and entering conviction, but not on the ground that cross-examination was inappropriately limited. That argument must fail for the basic reason that the district court's rulings did not actually prevent Defendant from impeaching the witness. "The Confrontation Clause guarantees an *opportunity* for effective cross-

7

examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *State v. Montoya*, 2014-NMSC-032, ¶ 47, 333 P.3d 935 (alteration, internal quotation marks, and citation omitted); *see State v. Smith*, 2001-NMSC-004, ¶ 19, 130 N.M. 117, 19 P.3d 254 ("[T]he [district] court retains wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on cross-examination based on concerns about, among other things, . . . interrogation that is repetitive or only marginally relevant." (omission, internal quotation marks, and citation omitted)). Defendant had his opportunity to impeach Detective Miranda, and his questioning—even following the formula invented by the court—uncovered the inconsistency that he wanted to present to the jury.

**Breaking and Entering**

{13}     For whatever reason, the State altered the elements set forth in the uniform jury instruction for breaking and entering when it submitted its requested instructions to the court. We have cautioned against rewriting instructions in the past. *See Jackson v. State*, 1983-NMSC-098, ¶ 5, 100 N.M. 487, 672 P.2d 660 ("Noncompliance with the uniform jury instructions in criminal cases is reversible error if the failure eliminates an essential element of the crime in the instruction or if the defendant is prejudiced."); *State v. Watchman*, 2005-NMCA-125, ¶ 15, 138 N.M. 488, 122 P.3d

855 ("[U]niform jury instructions and use notes are to be followed without substantial modification." (internal quotation marks and citation omitted)).

{14} Generally, an elements instruction may only be altered if alteration is necessary to convey the law to the jury and only if the modification is supported by binding precedent or unique circumstances in a particular case. *See* UJI Criminal, General Use Note NMRA. If a "court determines that a uniform instruction must be altered, the reasons for the alteration must be stated in the record." *Id.* In this case, the court accepted the State's proposed instruction without stating any reason for deviating from the elements in UJI 14-1410 NMRA.

{15} In pertinent part, the second element of the uniform instruction requires proof that "entry was obtained by [fraud] [deception] [the breaking of _____ ] [the dismantling of _____ .]" UJI 14-1410 (footnote omitted). The use notes instruct the court to choose between the four, bracketed alternatives for obtaining entry, and when entry is obtained by breaking or dismantling as opposed to fraud or deception, the use notes provide that the instruction must specify the property or device that was actually broken. None of that happened here. The jury was instead instructed that Defendant could be convicted if "[t]he entry was obtained by forcing open the front door[.]" That instruction was only proper if it substantially followed the language of

9

the statute or used equivalent language. *State v. Rubio*, 1999-NMCA-018, ¶ 6, 126 N.M. 579, 973 P.2d 256.

{16} As it turns out, the distinction between breaking and forcible entry is important in our law. When entry is not obtained by fraud or deception, the offense of breaking and entering requires an actual "breaking." *See* § 30-14-8(A) ("Breaking and entering consists of the unauthorized entry of any . . . dwelling . . . by the breaking or dismantling of any part of the . . . dwelling . . . or by the breaking or dismantling of any device used to secure the . . . dwelling."). This is not a situation where the statute means something other than what it says. *See State v. Sorrelhorse*, 2011-NMCA-095, ¶ 20, 150 N.M. 536, 263 P.3d 313 (interpreting the breaking and entering statute according to its plain terms); *State v. Michael S.*, 1995-NMCA-112, ¶ 3, 120 N.M. 617, 904 P.2d 595 ("Ordinarily, we should give effect to the plain language of a statute.").

{17} There are two competing meanings of the term "breaking." The first is "breaking" in the legal sense at common law, which is "to force entry into[;] enter by force or violence[;] open for illegal entry[.]" *Webster's Third New Int'l Dictionary* 271 (unabridged ed. 1986); *see Black's Law Dictionary* 227 (10th ed. 2014) ("In the modern American criminal codes, only seldom is there a requirement of a breaking." (internal quotation marks and citation omitted)). That definition closely resembles the

forcible-entry-type instruction given in this case. The second is the ordinary meaning of "breaking" as understood by ordinary people: "to split into pieces or smash into parts or fragments typically by a blow or stress and with suddenness or violence." *Webster's Third New Int'l Dictionary* 271.

{18} When the Legislature enacted Section 30-14-8(A), it favored the latter over the former and departed from common law burglary concepts that permitted a conviction based on "breaking the close" and other notions of constructive breaking that are archaic outside the law. *Sorrelhorse*, 2011-NMCA-095, ¶ 20. "[B]y addressing the 'breaking' of 'any part' or 'any device used to secure,' " Section 30-14-8(A) "contemplates a physical breaking contrary to common law burglary." *Sorrelhorse*, 2011-NMCA-095, ¶ 20. Thus, we held in *Sorrelhorse* that criminal damage to property is a lesser included offense of breaking and entering because actual property damage is an element of both offenses. *Id.* ¶ 21. In other words, consistent with the plain language of the statute, breaking and entering in New Mexico punishes the invasion of a closed structure effectuated by physical damage to that structure. *See generally* UJI 14-1410 comm. cmt. ("[I]f a person opens an unlocked door . . . with the intent to merely go in and lie down, that person would be guilty of neither burglary nor breaking and entering. It would not be . . . breaking and entering since the door was not locked and no breaking or dismantling occurred.").

{19} As mentioned earlier, Defendant's impeachment of Detective Miranda called into question whether anyone actually broke open the door. In truth, that issue was factually in dispute throughout. For instance, there was a dispute about whether a crowbar or other tool was used to effectuate entry because no such tool was ever seen by any witness or found by police; investigating officers lost the photographs of the door that they testified would have corroborated Mendoza's testimony that her door showed damage after the incident; and Mendoza's brother, present in her apartment during the home invasion, apparently believed that Mendoza partially opened the door before Defendant pushed his way in. Detective Miranda disregarded that statement in his testimony because he thought that Mendoza's brother had a poor vantage point because he was entering the living room from another room at the time of the commotion at the door. But the jury may have decided not to credit Mendoza or Detective Miranda. *See Murphy v. Frinkman*, 1978-NMCA-127, ¶ 22, 92 N.M. 428, 589 P.2d 212 ("After hearing witnesses testify, the jury tests the credibility of the witness. They may disbelieve either party.").

{20} As a result, the jury could have believed that Defendant forced open a door that was already partly open and still properly applied the language from the improper instruction—that "entry was obtained by forcing open the front door"—to convict Defendant of breaking and entering. Although the elements in the jury instruction

have not been challenged below or on appeal, it would be wrong to let that conviction stand. *State v. Barber*, 2004-NMSC-019, ¶ 8, 135 N.M. 621, 92 P.3d 633 ("[T]here exists in every court an inherent power to see that a man's fundamental rights are protected in every case." (omission, internal quotation marks, and citation omitted)); *State v. Osborne*, 1991-NMSC-032, ¶ 40, 111 N.M. 654, 808 P.2d 624 ("[I]t is the duty of the court, not the defendant, to instruct the jury on the essential elements of a crime.").

{21} In any case, Defendant does argue that his convictions for breaking and entering and burglary violate his right to be free from double jeopardy. That will also necessitate reversal of the breaking and entering conviction, which imposes the lesser sentence. *See State v. Montoya*, 2013-NMSC-020, ¶ 55, 306 P.3d 426. Defendant's argument raises a double-description challenge that requires we first decide factually "whether the conduct underlying the offenses is unitary, *i.e.*, whether the same conduct violates both statutes[,]" and if so, we consider the legal question "whether the [L]egislature intended to create separately punishable offenses." *Swafford v. State*, 1991-NMSC-043, ¶ 25, 112 N.M. 3, 810 P.2d 1223. The State appropriately concedes unitary conduct since the single act of entering the apartment is the factual basis for both convictions.

{22} When, as here, the statutes themselves do not expressly provide for multiple punishments, we begin by applying the rule of statutory construction from *Blockburger v. United States*, 284 U.S. 299, 304 (1932), to ensure that each provision requires proof of a fact that the other does not. *Swafford*, 1991-NMSC-043, ¶¶ 10, 30. In conducting our *Blockburger* analysis of a statute that contains multiple alternatives for committing an offense (i.e., in this case by fraud, deception, breaking, or dismantling), we look to the elements as charged in the jury instructions. *See State v. Gutierrez*, 2011-NMSC-024, ¶¶ 53, 58, 150 N.M. 232, 258 P.3d 1024. This is simply a test to determine whether one offense, as charged to the jury, is a lesser offense included within the other, *State v. Ramirez*, No. 34,303, 2016 WL 3030154, 2016-NMCA-___, ¶ 22, ___ P.3d ___ (May 25, 2016), *cert. denied*, 2016-NMCERT-007, ___ P.3d ___ (No. 35,949, July 20, 2016), because a defendant cannot be punished for both a greater and its lesser offense, *see Gutierrez*, 2011-NMSC-024, ¶¶ 58-60.

{23} The State, citing *Sorrelhorse*, persuasively argues that breaking and entering is not a lesser included offense of burglary—when entry is effectuated by breaking—because the definition of "breaking" in the breaking and entering statute "contemplates a physical breaking contrary to common law burglary." 2011-NMCA-095, ¶ 20; *see also State v. Hernandez*, 1999-NMCA-105, ¶ 25, 127 N.M. 769, 987

14

P.2d 1156 ("Contrary to the common[]law definition of burglary, New Mexico does not consider 'breaking' to be an element of burglary.").

{24}   But there is a problem with that. According to that argument, which is well taken, the only element that prevents breaking and entering from being subsumed within burglary is the same "breaking" element that was omitted from the jury instruction in this case. An unauthorized—even forcible—entry that is not achieved by breaking could at most constitute criminal trespass, *see* NMSA 1978, § 30-14-1 (1995), which would be a lesser included offense of burglary, *State v. Romero*, 1998-NMCA-057, ¶ 16, 125 N.M. 161, 958 P.2d 119.

{25}   The effect of the erroneous UJI 14-1410 elements instruction was twofold: (1) Defendant was punished for the crime of forcible entry that does not exist in New Mexico; and (2) the crime of forcible entry, as charged and instructed to the jury, was subsumed within another offense (robbery) that he was also punished for. This all stemmed from the unexplained failure to adhere to the language in UJI 14-1410. As a result, we reverse Defendant's conviction for breaking and entering due to the erroneous modifications made to UJI 14-1410 in this case.

**CONCLUSION**

{26}   We reverse Defendant's conviction for breaking and entering and affirm in all other respects.

{27}   **IT IS SO ORDERED.**

                                   _____
                                   **LINDA M. VANZI, Judge**

**WE CONCUR:**

_____
**JONATHAN B. SUTIN, Judge**

_____
**TIMOTHY L. GARCIA, Judge**