1998-NMCA-057

958 P.2d 119

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Ricky Moses ROMERO, Defendant– Appellant.**

**No. 17836.**

Court of Appeals of New Mexico.

March 19, 1998.

Tom Udall, Attorney General, William McEuen, Ass't Attorney General, Santa Fe, for Plaintiff-Appellee.

Phyllis H. Subin, Chief Public Defender, Shelley A. Scott, Ass't Appellate Defender, Santa Fe, for Defendant-Appellant.

## OPINION

BOSSON, Judge.

{1}  We grant the State's motion for rehearing and substitute this opinion for the one filed February 20, 1998.

{2}  This appeal is directed at two issues. First, we determine when the crime of criminal trespass is a lesser-included offense of aggravated burglary and justifies a separate jury instruction. Second, we examine the defense of diminished capacity due to intoxication with respect to the specific intent necessary to commit the crime of aggravated burglary and when an instruction on that defense is warranted. Because Defendant was wrongfully refused an instruction on both issues, we reverse his conviction of aggravated burglary and remand for a new trial.

## BACKGROUND

{3}  On two separate occasions, Defendant entered the trailer home of his ex-girlfriend, Marisa Cruz, against her wishes. The first time Defendant entered Cruz's home, she asked him to leave, but he refused. She threatened to call the police if he did not leave, and Defendant replied that he did not care. Cruz believed Defendant was drunk because usually, if she asked him to leave, he would do so. Cruz testified that Defendant wanted her to sleep with him and that he kept touching her. In time, Defendant passed out on a couch, and Cruz called the police.

{4}  When Officer Sinclair arrived at the Cruz residence at approximately 2:11 a.m., Cruz told him that she wanted Defendant removed from her trailer. Officer Sinclair observed Defendant lying on a couch in the living room. He had to grab one of Defendant's arms to help Defendant up from the couch. Officer Sinclair testified that he needed assistance in removing Defendant from the Cruz residence because he believed that Defendant was under the influence of alcohol. With the assistance of another officer, Officer Sinclair placed Defendant in his police car. Officer Sinclair thought Defendant was drunk because he could smell alcohol and Defendant was unsteady on his feet. Although Officer Sinclair initially planned to place Defendant in a detoxification cell so that he could sober up, the officer changed his mind and decided to take Defendant home. Officer Sinclair testified that once he woke up Defendant and got him out into the front yard, Defendant "had pretty much come to and knew his whereabouts and seemed to be like he was under his own power to where [he] could go ahead and take him to his house." Officer Sinclair drove Defendant to his mother's home approximately three blocks from the Cruz trailer. Defendant walked into his mother's residence "on his own power" and shut the door behind him.

{5}  After Officer Sinclair and Defendant left, Cruz began to fall asleep on the couch. About fifteen minutes after Officer Sinclair had first removed Defendant from her home, Cruz was awakened by Defendant. Defendant had reentered her home and was sitting on the couch above her head and watching her. As soon as she opened her eyes, Defendant grabbed her. Defendant asked why Cruz had called the police, and the two began arguing and fighting. Defendant dragged Cruz through the kitchen into her bedroom as Cruz resisted and tried to fight him off. Defendant threw Cruz on the bed and began choking her. Defendant removed Cruz's shorts and grabbed her panties and tried to take them off. While trying to open Cruz's legs, Defendant had his thumbs pressed in her genital area. The two struggled on the bed for approximately two hours until Defendant passed out, and Cruz again called the police.

{6} Officer Montoya was dispatched to Cruz's residence at approximately 3:55 a.m. and responded to the call in about five minutes. When he arrived, Cruz told him Defendant had tried to penetrate her. Officer Montoya found Defendant on the bed naked from the waist down. After taking Defendant into protective custody, Officer Montoya telephoned Cruz to tell her they could hold Defendant in detoxification for eight hours.

{7} Defendant was not charged with a crime until approximately two years later. Charges were filed for aggravated burglary, assault with intent to commit a violent felony, false imprisonment, and criminal sexual contact. Defendant was convicted of aggravated burglary and false imprisonment. On appeal, Defendant challenges only his conviction for aggravated burglary.

## DISCUSSION

{8} Aggravated burglary requires the unauthorized entry of a dwelling, with intent to commit a felony, and that the offender either be armed or commit a battery in the course of the burglary. NMSA 1978, § 30-16-4 (1963). The State sought an aggravated burglary conviction on the theory that when Defendant entered Cruz's home, he did so with the intent to commit the felony of criminal sexual penetration. Specifically, the jury was instructed that to find Defendant guilty of aggravated burglary, the State had to prove that "[w]hen the defendant entered the residence he intended to cause Marisa Cruz to engage in sexual intercourse through the use of physical force or physical violence." (Emphasis omitted.) An intent formed after the illegal entry would not suffice. Defendant contended that he had no intent to rape Ms. Cruz at the time he entered her trailer, and therefore Defendant requested an instruction on criminal trespass, as a lesser-included offense of aggravated burglary. A conviction of criminal trespass would punish Defendant for the illegal entry alone without the simultaneous intent to commit rape. Defendant also argued for an instruction that if the jury found Defendant was intoxicated, the jury could also find that he lacked the capacity to form the necessary intent to commit aggravated burglary.

## Criminal Trespass as a Lesser–Included Offense of Aggravated Burglary

{9} Defendant requested an instruction that to find Defendant guilty of the lesser-included offense of criminal trespass, the jury had to find the following elements beyond a reasonable doubt:

1. The defendant *entered or remained* in the dwelling of Marisa Cruz without the permission of Marisa Cruz;

2. The defendant knew or should have known that permission to enter or remain had been denied;

3. This happened in New Mexico on or about the 4th day of July, 1993.

(Emphasis added.) Defendant's instruction correctly followed the Uniform Jury Instruction (UJI), Rule 14–1402 NMRA 1998.

{10} The State objected to the tendered instruction, arguing that criminal trespass is not a lesser-included offense of aggravated burglary. The State took the position that the second element of criminal trespass, that permission to enter or remain had been denied, required a discrete affirmative act on the part of the occupant of the dwelling, which is not an element of aggravated burglary. The trial court agreed, stating that the second element of the proposed instruction would insert a different element not required for aggravated burglary. As the trial court stated: "if the jury were to reject what Miss Cruz has to say, that just that rejection of those items does not bring it down to this potential lesser included or to a lesser included. It really, I don't think it does." This reasoning indicates that the trial court also based its refusal of Defendant's tendered instruction on a lack of evidence to support the lesser-included offense. On appeal, the State's sole argument is that there was no view of the evidence tending to show that criminal trespass was the highest degree of crime committed. We review the trial court's refusal of the tendered instruction on the ground argued below, but we also determine that evidence was presented upon which a jury could reasonably base a verdict of criminal trespass as the highest degree of crime committed.

{11} Aggravated burglary is defined, in relevant part, as "the unauthorized entry of any ... dwelling or other structure ... with intent to commit any felony or theft therein and the person ... commits a battery upon any person while in such place, or in entering or leaving such place." Section 30–16–4. The trial court instructed the jury that to find Defendant guilty of aggravated burglary, it had to find the following elements:

1. The defendant entered Marissa [sic] Cruz's residence without authorization or permission;

2. When the defendant entered the residence he intended to cause Marisa Cruz to engage in sexual intercourse through the use of physical force or physical violence;

3. The defendant touched or applied force to Marissa [sic] Cruz in a rude or angry manner while entering or leaving, or while inside;

4. This happened in New Mexico on or about the 4th day of July, 1993.

(Emphasis omitted.)

{12} This court has previously stated with regard to a lesser-included offense instruction: "A failure to instruct the jury on a lesser included offense constitutes reversible error if: (1) the lesser offense is included in the greater, charged offense; (2) there is evidence tending to establish the lesser included offense and that evidence establishes that the lesser offense is the highest degree of crime committed; and (3) the defendant has tendered appropriate instructions preserving the issue, SCRA 1986, 5–608(D) (Repl.1992)." *State v. Diaz,* 121 N.M. 28, 30, 908 P.2d 258, 260 (Ct.App.1995) (citations omitted).

**Lesser Offense Included in the Greater Offense**

{13} In determining whether the lesser offense is included in the greater, charged offense, "[t]he question is whether the greater offense, which is charged, can be committed without also committing the lesser." *State v. Ruiz,* 94 N.M. 771, 778, 617 P.2d 160, 167 (Ct.App.1980). In New Mexico, there have been several tests for determining whether a lesser offense is nec-

essarily included in the greater offense. Previously, when a defendant requested the instruction, we followed the strict elements approach. *See State v. Henderson,* 116 N.M. 537, 541, 865 P.2d 1181, 1185 (1993), *overruled by State v. Meadors,* 121 N.M. 38, 46–47, 908 P.2d 731, 739–40 (1995). Under this approach, the lesser offense cannot have any element not included in the greater offense. *Henderson,* 116 N.M. at 541, 865 P.2d at 1185. This was the approach suggested by the State at the trial court level. However, the strict elements approach was overruled in *Meadors.* *See Meadors,* 121 N.M. at 46–47, 908 P.2d at 739–40.

{14} In *Meadors,* the Supreme Court outlined the different approaches of what constitutes a lesser-included offense. *Id.* at 41–44, 908 P.2d at 734–37. Following *State v. DeMary,* 99 N.M. 177, 655 P.2d 1021 (1982), the Court adopted what it labeled the "cognate approach," which applies when the prosecution requests a lesser-included instruction on an offense which was not explicitly set out in the charging instrument. *Meadors,* 121 N.M. at 44, 908 P.2d at 737. Although the holding in *Meadors* addressed a request for a lesser-included instruction by the state, not the defendant, the Supreme Court also reasoned that "the defendant's right to such an instruction is at least as great as the State's right, and that the defendant is entitled to such an instruction if, under the facts of a given case, the State would be so entitled." *Id.* at 47, 908 P.2d at 740; *see also State v. Campos,* 1996–NMSC–043, ¶ 21 n. 2, 122 N.M. 148, 921 P.2d 1266 (citing *Meadors* for contention that for parity considerations, "cognate approach" also applicable when the defendant requests a lesser-included offense instruction). Clarifying the approach taken in *DeMary,* the Supreme Court concluded "that the *DeMary* Court intended that '[f]or the offense to be necessarily included, the greater offense cannot be committed [*under the facts of the case as alleged in the charging document and supported by the evidence* ] without also committing the lesser offense.' " *Meadors,* 121 N.M. at 43, 908 P.2d at 736 (quoting *DeMary,* 99 N.M. at 179, 655 P.2d at 1023).

■ {15} Like *DeMary*, the lesser offense in this case includes alternative ways of committing the crime—entering and remaining. Therefore, it is theoretically possible to commit the crime of aggravated burglary without also committing the crime of criminal trespass by remaining on the property after being denied permission to do so. *See Ruiz*, 94 N.M. at 778–79, 617 P.2d at 167–68.

■ {16} Although not a lesser-included offense under the more theoretical strict elements test of *Henderson*, criminal trespass is a lesser-included offense of aggravated burglary under the "cognate approach" of *Meadors*, which overruled *Henderson* as promoting "overly technical inflexibility[,]" *Meadors*, 121 N.M. at 46–47, 908 P.2d at 739–40, and under the specific facts of this case. When, as in this case, criminal trespass is factually based solely on unlawful entry, not on unlawfully remaining without consent, then criminal trespass is necessarily included within the offense of aggravated burglary of a dwelling house. *See Ruiz*, 94 N.M. at 778–79, 617 P.2d at 167–68. "When one commits burglary of a dwelling house one also commits a criminal trespass based on that entry." *Id.* at 780, 617 P.2d at 169. Therefore, under the facts of this case, Defendant could not commit aggravated burglary without also committing criminal trespass by entering Cruz's trailer without her permission.

■ {17} We disagree with the State's argument that the second element of Defendant's tendered instruction, denial of permission to enter or remain, requires an additional affirmative act on the part of the occupant of the dwelling which would not be an element of aggravated burglary. "The required knowledge for criminal trespass is knowledge that there is no consent to enter. Such knowledge is included with the unauthorized entry required for burglary." *Id.* at 779, 617 P.2d at 168.

■ {18} Defendant's requested instruction included both the "entering" and "remaining" alternatives. Because the "remaining" alternative would not be a lesser-included offense even under the cognate approach, Defendant would not be entitled to his requested instruction. *See Ruiz*, 94

N.M. at 779, 617 P.2d at 168. However, the presence of those extra words was not the reason the trial court denied the instruction, and as *Diaz* establishes, the presence of those words is not fatal to Defendant's contention under the facts of this case. *See Diaz*, 121 N.M. at 33–34, 908 P.2d at 263–64.

**Evidence Establishing Lesser Offense as Highest Crime Committed**

■ {19} Next, we determine whether there is evidence from which a jury could conclude that the lesser-included offense of criminal trespass is the highest degree of crime committed. *Id.* at 31–32, 908 P.2d at 261–62. The question is whether a reasonable version of the evidence could lead to the conclusion that at the time he entered the residence Defendant had no specific intent to sexually assault Cruz, and that such intent developed later when the two began fighting. *See State v. Southerland*, 100 N.M. 591, 596, 673 P.2d 1324, 1329 (Ct.App.1983) (stating second prong to be "whether the evidence showed anything less than intent to inflict an injury which created a high probability of death."), *rev'd on other grounds, State v. Orosco*, 113 N.M. 780, 833 P.2d 1146 (1992). We view the evidence in the light most favorable to giving the instruction. *State v. Vallejos*, 1996–NMCA–086, ¶ 28, 122 N.M. 318, 924 P.2d 727, *aff'd in part & rev'd in part on other grounds*, 1997–NMSC–040, ¶ 2, 123 N.M. 739, 945 P.2d 957.

■ {20} Initially, we address Defendant's argument that the jury acquitted him of any completed sex crime, and therefore it could rationally have found that Defendant entered Cruz's residence without the intent to commit such a crime. However, we note that "[t]he crucial factor in the crime of aggravated burglary is whether the defendant had the *intent* to commit a felony on entering the dwelling, not whether the felony was actually committed. Intent does not have to be consummated." *State v. Castro*, 92 N.M. 585, 588, 592 P.2d 185, 188 (Ct.App. 1979). Therefore, the failure of Defendant to complete the crime of criminal sexual penetration did not preclude the jury from concluding that at the time of entry Defendant intended to force Cruz to engage in sexual

intercourse. "Proof of intent at the time of entry does not depend upon the subsequent commission of the felony, failure to commit the felony or even an attempt to commit it." *Id.*

{21} However, the jury did not necessarily have to conclude that Defendant had this intent; the evidence went both ways. Criminal trespass may have been the highest degree of crime committed. For example, there was evidence that the second time Defendant entered Cruz's home, he merely sat and watched her sleep. It was not until Cruz awoke that Defendant grabbed her. Defendant immediately expressed his anger at Cruz for calling the police, and the two began arguing and fighting. Under these circumstances, a reasonable jury could infer that Defendant had not formed the requisite intent to commit criminal sexual penetration until after he had entered the trailer or even until after Cruz awoke. Consequently, there is evidence tending to establish Defendant's theory, and thus he was entitled to an instruction on criminal trespass.

**Diminished Capacity Resulting from Intoxication**

{22} It is settled law that "[a] showing of intoxication is a defense to a specific intent crime where the intoxication is to such a degree as would negate the possibility of the necessary intent." *State v. Lovato,* 110 N.M. 146, 147, 793 P.2d 276, 277 (Ct.App.1990). In this case, the specific intent necessary for aggravated burglary included the intent to subject Cruz to criminal sexual penetration by physical force or violence, and the jury was so instructed. Defendant argues that he was so intoxicated at the time he entered Cruz's home, that he could not have formed the specific intent necessary to distinguish aggravated burglary from the lesser-included offense of criminal trespass. Defendant contends the trial court erred in refusing to instruct the jury on diminished capacity resulting from intoxication which, pursuant to Rule 14–5111 NMRA 1998, would obstruct the requisite specific intent. The State opposed the instruction, arguing that there had to be affir-

mative evidence that Defendant's intoxication actually affected his ability to form the specific intent necessary for the crime of aggravated burglary. This evidence might come from the accused, but Defendant did not testify. It might come from an expert witness, but Defendant did not present any such testimony. The trial court agreed and refused the instruction. We review de novo the question of whether there was evidence to support an instruction on intoxication as a defense. *Vallejos,* 1996–NMCA–086, ¶ 28, 122 N.M. 318, 924 P.2d 727. Again, we view the evidence in the light most favorable to giving the instruction. *Id*.

{23} This question presents an opportunity to clarify the kind of evidence a defendant must present to earn a jury instruction on diminished capacity resulting from intoxication. In *State v. Williams,* 76 N.M. 578, 417 P.2d 62 (1966), the Supreme Court stated that "evidence as to intoxication must be substantial and must relate to defendant's condition as of the time of the commission of the [crime], or be so closely related in time that it can reasonably be inferred that the condition continued to the time of the commission of the [crime]." *Id.* at 586, 417 P.2d at 67. In *Williams,* evidence existed that the accused drank a double shot of scotch whiskey approximately one hour before the shooting, but no evidence indicated that he was actually affected by the drink. *Id.* at 585, 417 P.2d at 67. Instead, the accused relied on the testimony of a police officer who smelled an odor of alcohol on the accused's breath. *Id.* However, the officer also testified that the defendant did not appear intoxicated, and therefore the Court concluded that there was neither substantial evidence of intoxication nor evidence that it affected the accused's condition at the time of the shooting. *Id.* at 585–86, 417 P.2d at 66–67. The instruction was properly refused. *See id.* at 586, 417 P.2d at 67.

{24} Relying on the standard in *Williams,* the Supreme Court later reversed a defendant's murder conviction in *State v. Privett,* 104 N.M. 79, 717 P.2d 55 (1986). The majority of the Court concluded that the defendant was entitled to an instruction on intoxication based on evidence that the de-

fendant was a long-term alcoholic, that he had been drinking heavily and acting strangely during the hours surrounding his wife's death, that he was likely very intoxicated at or near the time of the crime, and that he had only a vague and inaccurate memory of the events during the days leading to his wife's death. *Id.* at 81–82, 717 P.2d at 57–58. The defendant had a blood alcohol level of 0.18 percent two hours *after* being placed in protective custody. *Id.* at 81, 717 P.2d at 57. The majority concluded that this was sufficient evidence of intoxication from which a jury could reasonably infer effect on the defendant's ability to form a specific intent. The dissent in *Privett* broke from the majority on this latter point: the lack of additional, specific evidence proving effect on intent. The case before us tracks closely the debate in *Privett,* and in our view the evidence parallels that reflected in the opinion of the majority, which held it sufficient to warrant the instruction and rely on the intelligence of the jury.

{25}   In contrast, *Lovato,* which was decided after *Privett,* clarifies when an instruction on intoxication is not warranted by the evidence. In *Lovato,* the defendant had been drinking from 3:00 p.m. to 6:00 p.m. on the day of the crime and he was "pretty drunk." 110 N.M. at 146–47, 793 P.2d at 276–77. However, the crime occurred at approximately 10:30 p.m., over four hours after he had been drinking and after he had been asleep for some time. *Id.* at 147, 793 P.2d at 277. There was no direct evidence that the accused was still intoxicated four hours later when the crime was committed. *Id.* at 147–48, 793 P.2d at 277–78. In deciding whether additional evidence was required, this Court followed *Williams:*

> If this evidence [of intoxication] is sufficiently close in time that a jury can reasonably infer defendant remained impaired at the time of the crime, an intoxication instruction is warranted. However, if there is a significant lapse of time between the time of intoxication and the time of the crime, additional evidence must be submitted as to the continued effect of the intoxication on the defendant at the time of the crime.

*Id.* at 147, 793 P.2d at 277. Because there was no evidence connecting the accused's intoxication earlier in the day to his mental state at the time the crime was committed, we determined in *Lovato* that the accused had failed to "point to any evidence in the record specifically relating to the effect his intoxication had on his ability to form the required intent for aggravated burglary." *Id.* at 148, 793 P.2d at 278.

{26}   These cases, taken together, lead us to the correct rule to apply to this case. When there is evidence of intoxication at or near the time of the crime, a defendant need not present specific evidence as to what degree the intoxicant affected him. However, mere evidence that the defendant consumed an intoxicant is not enough. Typically, evidence of intoxication will come from witnesses who observed the defendant's behavior and demeanor at or near the time of the crime. From this kind of evidence a lay jury can apply common knowledge and its own personal experience to assess the effects of intoxication on the defendant's ability to form the specific intent necessary for the crime charged. A lay jury does not necessarily need additional evidence such as expert testimony under these circumstances. However, as the passage of time lengthens between intoxication and the commission of the crime, the greater the likelihood that additional evidence will be required to assist the jury and avoid rank speculation. *Cf. State v. Luna,* 93 N.M. 773, 776, 780, 606 P.2d 183, 186, 190 (1980) (affirming refusal of tendered instruction on diminished capacity resulting from intoxication when only evidence of drinking alcohol was on the day after the crime occurred).

{27}   We conclude that the evidence of intoxication in this case was substantial both in terms of degree and proximity in time to the crime, and we determine that the evidence was sufficient to justify the requested instruction to negate specific intent even without expert testimony. Defendant was intoxicated when he entered Cruz's trailer the second time. He had already passed out drunk during his first visit. Much of this evidence comes from the corroborating observations of the police officers

and the victim. It was only fifteen minutes after the officer first removed Defendant from the trailer that Defendant entered Cruz's trailer the second time. Given the short period of time between the two incidents there was substantial evidence of Defendant's drunken condition at or near the time he entered Cruz's trailer the second time which was the critical moment for the jury to analyze Defendant's capacity for specific intent with respect to the crime of aggravated burglary.

**{28}** The State counters with evidence tending to refute Defendant's intoxication. After Defendant had been removed from Cruz's residence the first time, the police officer's testimony indicated that he was more in control and able to walk into his home without help. In other words the effects of intoxication had worn off before he returned to the Cruz residence. However, "[i]n deciding whether the instruction is proper, the trial court must not weigh the evidence, but must simply determine whether such evidence exists." *Privett*, 104 N.M. at 82, 717 P.2d at 58. Because the evidence of Defendant's intoxication is sufficiently close in time to the aggravated burglary, the jury could reasonably infer that Defendant remained impaired when he entered Cruz's trailer the second time. Viewing the evidence in the light most favorable to giving the instruction, *Vallejos*, 1996-NMCA-086, ¶ 28, 122 N.M. 318, 924 P.2d 727, we hold that Defendant was entitled to an instruction on diminished capacity resulting from intoxication.

## CONCLUSION

**{29}** Because Defendant was entitled to jury instructions on both criminal trespass as a lesser-included offense of aggravated burglary and diminished capacity resulting from intoxication, we reverse Defendant's conviction for aggravated burglary and remand for a new trial. Defendant's conviction for false imprisonment remains in effect.

**{30}** **IT IS SO ORDERED.**

APODACA and PICKARD, JJ., concur.