Certiorari Denied, December 6, 2011, No. 33,295; and Certiorari Denied, December 7, 2011, No. 33,297

IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2012-NMCA-004

Filing Date: October 13, 2011

Docket No. 29,720

STATE OF NEW MEXICO,

Plaintiff-Appellee,

v.

AUDIE DICKERT,

Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY
Stephen Bridgforth, District Judge

Gary K. King, Attorney General
Santa Fe, NM
M. Anne Kelly, Assistant Attorney General
Albuquerque, NM

for Appellee

Jacqueline L. Cooper, Acting Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellant

OPINION

CASTILLO, Chief Judge.

{1}     There were two motions for rehearing filed in this case.  We deny the State's motion for rehearing.  We grant Defendant's motion for rehearing. The opinion filed on July 26, 2011 is withdrawn, and the following opinion is substituted in its place.

1

**{2}** Around midnight on May 30, 2007, after having consumed a considerable amount of alcohol, Defendant accompanied three friends to a party in a desert area outside Las Cruces, New Mexico. There was a serious altercation, and Defendant was identified as one of the persons who attacked other attendees; who inflicted significant harm on one of them; who severely damaged two vehicles using a baseball bat and rocks; and who took or orchestrated the taking of some Red Bull, two cell phones, a car stereo faceplate, and compact discs. He was indicted for numerous crimes related to the events of the evening. The primary issue in this case relates to jury instructions. At trial, Defendant testified and denied having committed the acts underlying the crimes charged. At the close of trial, Defendant requested a jury instruction on intoxication as a defense to the specific intent crimes charged. The district court refused the jury instruction on the ground that Defendant's theory of noninvolvement was inconsistent with the defense of intoxication. The propriety of this ruling is a question of first impression in New Mexico. Because a criminal defendant has a right to an instruction on any recognized defense for which evidence has been presented and because we leave it to the jury to assess the credibility of the theories offered, we hold that the jury instruction on intoxication should have been given. Thus, we reverse and remand for a new trial on the specific intent crimes. Defendant also claims error based on a confrontation clause violation, insufficient evidence, admission of evidence, and ineffective assistance of counsel. We affirm on these issues.

## BACKGROUND

**{3}** We begin with a summary of the testimony presented at Defendant's trial. Because Defendant was ultimately convicted of several of the counts charged, we view the evidence in the light most favorable to the verdict. *State v. Apodaca*, 118 N.M. 762, 766, 887 P.2d 756, 760 (1994).

**{4}** On May 30, 2007, Defendant attended a party at a location in the desert outside of Las Cruces known as "the pit." The pit is an area in the desert surrounded by hills where teenagers or college students go to associate and have bonfires. Defendant arrived at the pit around midnight and had been drinking heavily beforehand. He was accompanied by Chad Williams, Kadrian Lucero, and Isaac Gutierrez.

**{5}** When Defendant arrived, there was only a small group of people present. This group included Jacob Baca, Jacob Vasquez, Cesar Villa, Jeff Martinez, and Crystal Marshal.

**{6}** At that time, Jeff and Crystal were employed by the Red Bull beverage company and were on a promotional tour. They had been given use of a Red Bull company car as part of their duties. The car was adorned with a replica of a Red Bull can on its roof and had the Red Bull logo painted on its side. They had driven the company vehicle to the pit and had gratuitously dispensed Red Bulls throughout the evening.

**{7}** Defendant, Kadrian, and Chad approached the group. Defendant was agitated and

2

angry and inquired several times about a person named Patrick. The group repeatedly denied knowing this person, and eventually Defendant and his companions began to walk toward their vehicle. They returned, however, and again they angrily confronted the group.

{8} This time, Defendant claimed that someone had thrown a rock at them and demanded to know who was responsible. The members of the other group all denied having thrown a rock, but Defendant would not accept this response. He became enraged, took off his shirt, and attempted to punch Jacob V. Jacob V. avoided several punches and fled into the desert.

{9} Jacob B. knew Defendant somewhat and unsuccessfully attempted to calm him down. Defendant continued to act aggressively, and Jacob B. backed away. Kadrian and Chad had armed themselves with baseball bats at this point and approached Jacob B. They accused him of throwing the rock, so Jacob B. also fled into the desert. As Jacob B. was fleeing, the three men screamed that they intended to kill him.

{10} Cesar also knew Defendant somewhat and similarly attempted to reason with him, but this proved fruitless. Kadrian hit Cesar with a rock; Chad then threatened Cesar with a bat and told him to shut up or he would hit him. Cesar also fled into the desert.

{11} Meanwhile, Jeff and Crystal tried to get to the Red Bull car to escape the situation but were prevented from leaving when Defendant instructed Chad and Kadrian to stop them. The three men then confronted Jeff and Crystal and demanded that they relinquish all of their Red Bull. Jeff and Crystal complied with this demand. At one point, Chad struck Jacob V.'s dog with a bat and Jeff protested. Jeff was then struck with a bat and was rendered unconscious. Kadrian picked Jeff up, and Defendant hit him with the bat again. This act was repeated once more. Defendant also punched Jeff while he was lying on the ground unconscious.

{12} After the attack on Jeff ended, Defendant took Jeff's cell phone from his pocket. Simultaneously, Chad demanded that Crystal give him her phone, which she did. Cesar witnessed this activity from a distance and stated that Defendant orchestrated the theft of the phones.

{13} Crystal pleaded with Defendant and his companions to leave them alone, but her requests were ignored. She had been instructed to lie down and had done so. At some point, however, she stood in defiance, and Defendant commanded her to get back on the ground and pushed her down. She stood back up, and Defendant pushed her down again. When she stood up a third time, Defendant started screaming incoherently at her.

{14} Eventually, Chad responded to Crystal's pleas and helped Crystal put Jeff in the Red Bull car. Crystal drove away hurriedly and, as she was driving away, she heard Defendant yell at Chad for allowing them to leave. Cesar witnessed Defendant smash out the rear windshield of the Red Bull car as Crystal drove off.

{15} During the course of the melee, Defendant participated in attacking both the Red Bull car and Cesar's Ford Ranger. The vehicles were struck with bats and rocks, and both

3

vehicles sustained significant damage. In addition, Defendant entered Cesar's truck and took his stereo faceplate and compact disc collection. Cesar heard Defendant and his accomplices indicate their intention to steal the truck, but they could not get the truck started so they abandoned this plan.

**{16}** Defendant and his accomplices eventually fled the pit and traveled to a Circle K. The police had been contacted and arrested Defendant and the other men at that location. Cesar's stereo faceplate and compact disc collection as well as numerous cans of Red Bull were found inside the car driven to the Circle K by Defendant's group. At the police station, Defendant's behavior was erratic and violent.

**{17}** Chad and Kadrian were charged separately and entered into plea agreements. They testified against Defendant at his trial. The two Jacobs, Cesar, Jeff, and Crystal also testified, as did several of the officers who were involved in the aftermath of the incident. Defendant testified, and he denied both engaging in most of the above-described conduct and committing the charged crimes.

**{18}** At the close of trial, the district court granted a directed verdict as to several of the charges. Defendant requested an intoxication instruction pursuant to UJI 14-5111 NMRA as a defense to the specific intent crimes he was charged with, but the court declined to issue the instruction on the basis that it conflicted with Defendant's testimony that he did not commit the crimes alleged.

**{19}** The jury found Defendant guilty and convicted him of eleven counts including: two counts of robbery for taking Jeff and Crystal's cell phones; one count of aggravated battery for attacking Jeff; aggravated assault, false imprisonment, conspiracy to commit false imprisonment for his conduct towards Crystal; burglary of a vehicle for entering Cesar's truck with the intent to commit a theft within; larceny for taking Cesar's stereo faceplate and compact disc collection; two counts of criminal damage to property for intentionally damaging Cesar's truck and the Red Bull car; and battery for his conduct towards Jacob V. Defendant was sentenced to twelve years' incarceration, with nine of those years suspended, and two years of parole. Defendant appeals.

**DISCUSSION**

**{20}** On appeal, Defendant raises five issues. First, he claims that the district court erred in refusing to issue his requested instruction on the defense of intoxication. Second, he asserts that his right to confrontation under the Sixth Amendment was violated when the court refused to allow him to cross-examine Chad about his mental faculties. Third, he challenges the sufficiency of the evidence underlying the two robbery convictions, the false imprisonment conviction, and the criminal damage to property conviction related to the damage sustained by Cesar's truck. Fourth, he claims that the court erred in admitting the State's photographic evidence because the State failed to lay a proper foundation. Finally, he claims, pursuant to *State v. Franklin*, 78 N.M. 127, 129, 428 P.2d 982, 984 (1967), and *State v. Boyer*, 103 N.M. 655, 658-60, 712 P.2d 1, 4-6 (Ct. App. 1985), that he received ineffective assistance of counsel at trial. We consider these issues in the order listed.

4

**Intoxication Instruction**

**{21}** The district court declined to issue the intoxication instruction on grounds that such an instruction would be inconsistent with Defendant's trial theory, i.e., that he did not commit any of the specific intent offenses. The district court has correctly characterized Defendant's trial theory. We have reviewed Defendant's testimony, and his position during trial was that he did not commit the specific intent offenses for which he was charged and convicted. On appeal, Defendant argues that there is nothing which precludes him from asserting inconsistent defenses and asserts that the court committed reversible error in withholding the instruction. The State responds that we need not address the inconsistent defense issue. Citing the right for any reason doctrine, the State claims that "there was insufficient evidence . . . to provide the jury with evidence to show that Defendant was intoxicated to the degree that he lacked the specific intent to commit the specific intent crimes." We first examine the State's claim that there was insufficient evidence to justify the issuance of the instruction and, because we disagree with this claim, we then consider the issue of inconsistent defenses.

**Evidence supporting the instruction**

**{22}** "We review de novo the question of whether there was evidence to support an instruction on intoxication as a defense." *State v. Romero*, 1998-NMCA-057, ¶ 22, 125 N.M. 161, 958 P.2d 119. "[W]e view the evidence in the light most favorable to giving the instruction." *Id.*

**{23}** "It is settled law that [a] showing of intoxication is a defense to a specific intent crime where the intoxication is to such a degree as would negate the possibility of the necessary intent." *Id.* (alteration in original) (internal quotation marks and citation omitted). "[E]vidence as to intoxication must be substantial and must relate to [the] defendant's condition as of the time of the commission of the [crime], or be so closely related in time that it can reasonably be inferred that the condition continued to the time of the commission of the [crime]." *Id.* ¶ 23 (second and third alterations in original) (internal quotation marks and citation omitted). "When there is evidence of intoxication at or near the time of the crime, a defendant need not present specific evidence as to what degree the intoxicant affected him. However, mere evidence that the defendant consumed an intoxicant is not enough." *Id.* ¶ 26. We examine the evidence presented at trial in light of these standards.

**{24}** Defendant testified that on the night of the incident he casually consumed alcohol between 5:00 p.m. and 10:00 p.m. He then went to a house party where he played drinking games and consumed between six to ten beers. He left the house party around midnight and traveled to the pit as a passenger in someone else's vehicle because he was too drunk to drive. During the drive to the pit—a period of about twenty minutes—he consumed "a good portion" of a bottle of Jaegermeister.

**{25}** Defendant's behavior at the pit party was variously described as crazed, out of control, wild, and a state of rage. Defendant did not consume alcohol while at the pit but, given the amount he had consumed earlier, he claimed he was nevertheless "pretty

5

intoxicated." He was arrested at approximately 2:00 a.m. Defendant testified that the alcohol he had consumed prior to that point really "started kicking in" at the time of arrest, and he claimed he was "really bad" when he arrived at the police station. Deputy Reyes interacted with Defendant at the station and testified that Defendant smelled of alcohol, acted belligerent and violent, and appeared to be drunk or on some form of narcotic.

{26} This evidence of intoxication was substantial both in terms of degree and proximity to the time of Defendant's alleged crimes, and we conclude that this evidence was sufficient to justify the requested instruction on intoxication. *State v. Hernandez*, 2003-NMCA-131, ¶ 20, 134 N.M. 510, 79 P.3d 1118 ("[The d]efendant was entitled to the [intoxication] instruction if there was any evidence supporting it."). We turn now to whether the district court correctly withheld the intoxication instruction because it was inconsistent with Defendant's trial theory of noninvolvement. We note that the State has chosen not to address this issue.

**Inconsistent defenses**

{27} "The [district] court's rejection of [the] defendant's submitted jury instructions is reviewed by this Court de novo, because it is closer to a determination of law than a determination of fact." *State v. Ellis*, 2008-NMSC-032, ¶ 14, 144 N.M. 253, 186 P.3d 245 (internal quotation marks and citation omitted). The permissibility of inconsistent defenses in this jurisdiction has been addressed by the New Mexico Supreme Court and our Court, but only in the specific context of entrapment and duress. *See Martinez v. State*, 91 N.M. 747, 749, 580 P.2d 968, 970 (1978) (discussing a defendant's entitlement to an entrapment instruction when the defendant's theory at trial was inconsistent with entrapment); *State v. Garcia*, 79 N.M. 367, 369, 443 P.2d 860, 862 (1968) (same); *State v. Buendia*, 1996-NMCA-027, 121 N.M. 408, 411, 912 P.2d 284, 287 (same); *State v. Wright*, 84 N.M. 3, 5, 498 P.2d 695, 697 (Ct. App. 1972) (same); *see also State v. Tom*, 2010-NMCA-062, ¶¶ 26-32, 148 N.M. 348, 236 P.3d 660 (discussing a defendant's entitlement to a duress instruction when the defendant's theory at trial was inconsistent with duress). The question before us does not deal with entrapment and duress but rather whether Defendant was entitled to an instruction on intoxication given his reliance on the defense of noninvolvement.

{28} As a general rule, "inconsistent defenses may be interposed in a criminal case." 21 Am. Jur. 2d *Criminal Law* § 183 (2008). "[A] defendant may raise the alternative defenses of intoxication and noninvolvement in the offense[.]" *Id.*; *State v. Broughton*, 425 N.W.2d 48, 51 (Iowa 1988) ("We hold it was error to refuse [the defendant's] requested instruction on voluntary intoxication on the ground [that] it was inconsistent with his claim of alibi."); *see also* 22 C.J.S. *Criminal Law* § 55, at 90 (2006) ("In general, the fact that one defense is based on the theory that the accused did not commit the offense does not deprive the defendant of the right to take advantage of other defenses, although based on the theory of justification or excuse.").

{29} At least three justifications animate this principle. First, "[a]s a general proposition[,] a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." *Mathews v. United States*, 485

6

U.S. 58, 63 (1988); *accord State v. Trammel*, 100 N.M. 479, 481, 672 P.2d 652, 654 (1983) ("When evidence at trial supports the giving of an instruction on a defendant's theory of the case, failure to so instruct is reversible error."). Second,

> [t]he rule in favor of inconsistent defenses reflects the belief of modern criminal jurisprudence that a criminal defendant should be accorded every reasonable protection in defending himself against governmental prosecution. That established policy bespeaks a healthy regard for circumscribing the [g]overnment's opportunities for invoking the criminal sanction.

*United States v. Demma*, 523 F.2d 981, 985 (9th Cir. 1975). This excerpt from *Demma* was acknowledged by our Supreme Court in *Martinez*. *See Martinez*, 91 N.M. at 749, 580 P.2d at 970. Third, it is for the fact finder—not the court—to assess the credibility of defenses for which there exists sufficient evidence. *See id.* at 750, 580 P.2d at 971 ("Whether or not the defenses are believable is for the trier of fact to determine, inasmuch as alternative defenses are allowed."). We note an important corollary to this last justification: a criminal defendant who presents a jury with two totally inconsistent defenses must accept the potential peril of doing so. *See* 2 Wayne R. LaFave, *Substantive Criminal Law* § 9.8(f), at 108 (2003) ("[I]t would seem that the adversary process is itself a sufficient restraint upon resort to positions which are truly inconsistent. In a case where two positions are unquestionably logically inconsistent, a defendant who pursued both positions would certainly be found to be lacking credibility."). We agree with the justification for allowing inconsistent defenses to be simultaneously asserted and therefore adopt this position.

{30}    In the present matter, there was sufficient evidence that Defendant was significantly intoxicated at the time of the incident at the pit party notwithstanding his denial at trial that he did not commit the crimes charged. Thus, the district court's refusal to issue the intoxication instruction was reversible error. *See Trammel*, 100 N.M. at 481, 672 P.2d at 654. Defendant is entitled to a new trial on the specific intent offenses for which he was convicted. We turn to the next issue on appeal.

**Confrontation**

{31}    Defendant next argues that the district court violated his Sixth Amendment right to confrontation by limiting his cross-examination of Chad. Specifically, Defendant claims that he was wrongly precluded from inquiring about Chad's mental faculties and memory problems. We begin by reviewing the events at trial.

{32}    During cross-examination, Defendant pressed Chad about the specific timing of the events leading up to the incident at the pit. Chad expressed frustration and explained "I'm not good on the time, sir. I'm not good at all on the times, like the streets and stuff like that too." Defendant responded by inquiring about Chad's educational background stating, "I believe you told us you didn't graduate from high school; is that correct?" Chad responded in the affirmative, and Defendant added, "[T]hat's because you have some problems?" Chad again responded in the affirmative. At this juncture, the State objected and a bench conference ensued.

7

**{33}** At the bench, the district court informed Defendant that he was attempting to improperly impeach Chad and further pointed out that Defendant had misunderstood Chad's testimony. Defendant explained that Chad had raised the issue of incompetency at his own trial, which suggested he might have "issues with his memory." The district court replied that it was improper to attempt to raise that issue in front of the jury and informed Defendant that "[i]f he understands the questions you've asked him, I'm not fixing to let you impeach anything, those kinds of things, counsel. Not you, not him, not anybody. Okay." Defendant accepted the ruling and made no further objection.

**{34}** "Questions of admissibility under the Confrontation Clause are questions of law, which we review de novo." *State v. Aragon*, 2010-NMSC-008, ¶ 6, 147 N.M. 474, 225 P.3d 1280. In its answer brief, the State contends that we need not address the merits of Defendant's confrontation argument because he failed to preserve the claim. We agree. Defendant did not raise the issue of confrontation in response to the State's objection to Defendant's line of questioning and did not alert the court to this issue and invoke a ruling. *See* Rule 12-216(A) NMRA ("To preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked[.]"); *State v. Lopez*, 2008-NMCA-002, ¶ 8, 143 N.M. 274, 175 P.3d 942 ("The objection must be timely and must specifically apprise the district court of the claimed error, resulting in an intelligent ruling from the district court."). As the confrontation claim was not preserved, it will not be addressed. The State goes on to argue that the issue on appeal is actually an evidentiary matter: the propriety of the court's limitation of Defendant's cross-examination. But, in his brief in chief, Defendant raised only the confrontation issue and cites authority related only to that claim. Thus, the evidentiary issue identified by the State is not before us. *See State v. Gallegos*, 101 N.M. 526, 530, 685 P.2d 381, 385 (Ct. App. 1984) (observing that issues not argued on appeal are deemed abandoned).

**{35}** Defendant acknowledges the preservation problem in his reply brief and asserts that, if preservation is an issue, we should review the matter for fundamental error. Although Defendant asserts that the court's ruling was fundamental error, he does not develop the argument and, accordingly, we will not engage in a fundamental error review. *State v. Gonzales*, 2011-NMCA-007, ¶ 19, 149 N.M. 226, 247 P.3d 1111 ("[T]his Court has no duty to review an argument that is not adequately developed.").

**Sufficiency of the Evidence**

**{36}** Defendant asserts that the evidence was insufficient to support the two robbery convictions, the conspiracy to commit false imprisonment conviction, and the criminal damage to property conviction related to the attack on Cesar's truck. We have already determined that Defendant is entitled to a new trial on the two robbery convictions and the conspiracy to commit false imprisonment conviction. Thus, we need only address Defendant's arguments concerning the criminal damage to property conviction.

**{37}** "The sufficiency of the evidence is assessed against the jury instructions because they become the law of the case." *State v. Quiñones*, 2011-NMCA-018, ¶ 38, 149 N.M. 294, 248 P.3d 336. The sufficiency review itself involves a two-step process. *State v. Huber*,

2006-NMCA-087, ¶ 11, 140 N.M. 147, 140 P.3d 1096. Initially, the evidence is viewed in the light most favorable to the verdict. *Id.* Then the appellate court must make a legal determination of "whether the evidence viewed in this manner could justify a finding by any rational trier of fact that each element of the crime charged has been established beyond a reasonable doubt." *Apodaca*, 118 N.M. at 766, 887 P.2d at 760 (internal quotation marks and citation omitted). "[W]e will not reweigh the evidence nor substitute our judgment for that of the fact finder provided that there is sufficient evidence to support the verdict." *State v. Fuentes*, 2010-NMCA-027, ¶ 13, 147 N.M. 761, 228 P.3d 1181 (internal quotation marks and citation omitted).

**{38}** The jury was instructed that the essential elements of criminal damage to property included the following:

1. [D]efendant intentionally damaged property of another;
2. [D]efendant did not have the owner's permission to damage the property;
3. This happened in New Mexico on or about the 30th day of May, 2007.

**{39}** At trial, Cesar gave the following testimony. He had parked his Ford Ranger near the area of the pit that serves as both the entrance and exit. After the attack on Jeff ended, he observed Jeff and Crystal flee the pit in the Red Bull vehicle. Defendant and his accomplices started to leave shortly after. They got in their car and began to drive away, but as they neared his vehicle they stopped. Defendant, Kadrian, and Chad then got out of the car and began to bash out the windows on Cesar's truck. They also threw rocks at his truck and threw rocks through the windows. He then observed the men enter his vehicle and heard someone yell, "Take the truck," but they could not get it started. Eventually, they drove off, leaving the truck behind.

**{40}** After Defendant and his accomplices had departed, Cesar walked to his truck and inspected the vehicle. He discovered that they had done significant damage. The car was "all dinged up." There were two rocks inside the vehicle and shattered glass everywhere. Some of the glass had become embedded in the seats. The contents of the glove compartment were strewn throughout the vehicle. They had torn off the faceplate of his stereo, which irreparably damaged the entire stereo system. His rearview mirror was destroyed as was the windshield and all the other windows. The ignition column had also been irreparably damaged. All told, the vehicle sustained approximately $800 in damages.

**{41}** Cesar's testimony was consistent with other witness accounts. Chad testified that Defendant entered Cesar's vehicle in order to steal Cesar's stereo faceplate and stated that Defendant succeeded in doing so. Jacob V. testified that he observed Defendant throw a boulder through a vehicle window. Although he was unable to specify which vehicle, the jury could reasonably infer that it was Cesar's vehicle in light of Cesar's testimony that he observed Defendant throw rocks into his truck. *See State v. Garcia*, 2005-NMSC-017, ¶ 20, 138 N.M. 1, 116 P.3d 72 (recognizing that the jury is entitled to draw reasonable inferences from the evidence to reach a conclusion that the defendant committed a crime).

9

**{42}** Crystal offered a slightly different account of the events of the evening, but did testify, consistent with the other witnesses, that Defendant participated in damaging Cesar's vehicle. She stated that Defendant and Kadrian used a baseball bat to "bash" in the windows of both the Red Bull car and Cesar's vehicle and variously kicked both cars. Her testimony diverged from Cesar's account in that she stated that Defendant and Kadrian did the damage to Cesar's vehicle in her presence. Cesar testified that the damage to his vehicle occurred after Crystal and Jeff had departed the scene and that Chad was also involved. It was for the jury to decide the significance of this inconsistency and to reconcile, as they saw fit, the varying accounts of the events in question. *See State v. Chavez*, 116 N.M. 807, 814, 867 P.2d 1189, 1196 (Ct. App. 1993) (stating that the "trier of facts weighs the testimony, determines credibility of witnesses, reconciles inconsistent or contradictory statements of a witness, and determines where the truth lies").

**{43}** We conclude that there was sufficient evidence to support the criminal damage to property conviction related to the attack on Cesar's truck. We proceed to the next issue on appeal.

**Photographic Evidence**

**{44}** Defendant asserts that the district court erred in admitting certain photographic evidence at trial. "We review claims that a trial court erred in admitting evidence for abuse of discretion." *State v. Macias*, 2009-NMSC-028, ¶ 16, 146 N.M. 378, 210 P.3d 804. However, we need not reach the merits of Defendant's argument. *See State v. Fuentes,* 2010-NMCA-027, ¶ 29, 147 N.M. 761, 208 P.3d 1181 (explaining that appellate court does not review unclear or underdeveloped arguments).

**{45}** In his brief, Defendant does not identify the specific photographs that were purportedly admitted in error, and there are no photographic exhibits included in the record on appeal. Rather, he asserts that his argument arises from his "continuing objection to the State's photographic exhibits." From this statement, it appears to us that Defendant may be attacking the admission of all of the State's photographic exhibits, but we are not sure. This is problematic as there are instances in the record where Defendant expressly stated he had no objection to the admission of certain photographic exhibits. Defendant has failed to identify which photographs were objectionable and which were not, and he appears to be asking us to sift through the record to figure out the factual underpinnings of his claim. This we will not do. *See Muse v. Muse*, 2009-NMCA-003, ¶ 72, 145 N.M. 451, 200 P.3d 104 ("We will not search the record for facts, arguments, and rulings in order to support generalized arguments.").

**{46}** Moreover, Defendant has not argued or identified the remedy he is entitled to as a result of the alleged error and has made no attempt to prove that the admission of the photographs prejudiced him or constituted reversible error. *State v. Jett*, 111 N.M. 309, 312, 805 P.2d 78, 81 (1991) ("An evidentiary ruling within the discretion of the court will constitute reversible error only upon a showing of an abuse of discretion, and a demonstration that the error was prejudicial rather than harmless[.]" (citation omitted)). In short, this section of Defendant's brief provides us with nothing to review. We conclude that

Defendant failed to adequately develop his argument regarding the photographic exhibits and decline to address the matter further. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (declining to entertain a cursory and inadequately developed argument).

**Ineffective Assistance of Counsel**

{47} Lastly, Defendant argues, relying on *Franklin* and *Boyer*, that he received ineffective assistance of counsel at trial. Defendant identifies the correct standard of review that we employ in reviewing a claim of ineffective assistance. *See State v. Bernal*, 2006-NMSC-050, ¶ 32, 140 N.M. 644, 146 P.3d 289 ("For a successful ineffective assistance of counsel claim, a defendant must first demonstrate error on the part of counsel, and then show that the error resulted in prejudice.").

{48} Defendant claims that "his trial attorney was ineffective for failing to interview important witnesses [who] were at the party. These witnesses would have shown that [Defendant] was not as involved in the incident as the State's witnesses portrayed." Defendant has not identified who these other "witnesses" are, or whether there were in fact other people at the party at the time of the incident. Moreover, Kadrian, Chad, and all of the victims testified that the only people present at the pit during the time of the attack were Defendant's group and the group Defendant attacked. Without more, we cannot review Defendant's ineffective assistance claim. *See Headley*, 2005-NMCA-045, ¶ 15.

**CONCLUSION**

{49} Defendant was entitled to an intoxication instruction on the specific intent crimes for which he was charged. Thus, we reverse and remand for retrial on the following six convictions: the two robbery convictions, charged as counts one and two in the indictment; aggravated battery, charged as count three in the indictment; conspiracy to commit false imprisonment, charged as count eight in the indictment and renumbered count seven at trial; burglary of a vehicle, charged as count nine in the indictment and renumbered count eight at trial; and larceny, charged as count ten in the indictment and renumbered count nine at trial. We reject Defendant's other arguments and affirm the remaining convictions which include: aggravated assault, charged as count six in the indictment and renumbered count five at trial; false imprisonment, charged as count seven in the indictment and renumbered count six at trial; criminal damage to property over $1,000, charged as count eleven in the indictment and renumbered count ten at trial; criminal damage to property under $1,000, charged as count thirteen in the indictment and renumbered count ten at trial; and battery, charged as count fourteen in the indictment and renumbered count twelve at trial. This matter is remanded to the district court for proceedings consistent with this Opinion.

{50} **IT IS SO ORDERED.**

_____
**CELIA FOY CASTILLO, Chief Judge**

11

**WE CONCUR:**

_____

**MICHAEL D. BUSTAMANTE, Judge**

_____

**TIMOTHY L. GARCIA, Judge**

**Topic Index for _State v. Dickert_, No. 29,720**

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-SB | Substantial or Sufficient Evidence |
| | |
| **AT** | **ATTORNEYS** |
| AT-EA | Effective Assistance of Counsel |
| | |
| **CT** | **CONSTITUTIONAL LAW** |
| CT-CT | Confrontation |
| | |
| **CL** | **CRIMINAL LAW** |
| CL-IX | Intoxication |
| CL-SI | Specific Intent |
| | |
| **CA** | **CRIMINAL PROCEDURE** |
| CA-JI | Jury Instructions |
| CA-RT | Right to Confrontation |
| | |
| **EV** | **EVIDENCE** |
| EV-PG | Photographs |
| EV-SS | Substantial or Sufficient Evidence |